J-S40039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD GRAVATT, JR. | : | |
| | : | |
| Appellant | : | No. 2231 EDA 2017 |

Appeal from the Judgment of Sentence May 30, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0008237-2015

BEFORE: LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:           **FILED AUGUST 06, 2018**

     Donald Gravatt, Jr., appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, following his bench trial where he was found guilty of terroristic threats,[1] harassment[2], and stalking.[3] Gravatt was sentenced to time-served to 23 months' imprisonment, plus three years' probation for the terroristic threats conviction, one year of probation for the harassment conviction, and a concurrent probationary term of three years for stalking. After careful review, we affirm in part, vacate in part, and remand.

_____

[1] 18 Pa.C.S. § 2706.

[2] 18 Pa.C.S. § 2709.

[3] 18 Pa.C.A. § 2709.1.

_____

\*   Retired Senior Judge assigned to the Superior Court.

This case involves a long-standing feud among neighbors. The underlying facts, which recount various volatile arguments among Gravatt and his neighbors over eleven years, are succinctly set forth in the trial court's opinion and do not bear repeating. *See* Trial Court Opinion, 9/14/17, at 1-4. Quite frankly, this is a classic case of "he-said/she-said" that boils down to credibility determinations made by the fact finder at trial. Instantly, the trial court discredited Gravatt's trial testimony, thus resulting in a guilty verdict on all charges.

Gravatt filed timely post-sentence motions that were denied by the trial court. He filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. Gravatt raises the following issues for our review:

(1) Did the trial court err in allowing the Commonwealth to introduce a defense witness' 20-year-old *crimen falsi* conviction?

(2) Is the evidence insufficient to sustain the verdict of guilt because the Commonwealth failed to prove beyond reasonable doubt that [Gravatt] made a threat or that any remarks he made were spoken with the specific intent required by 18 Pa.C.S. § 2706?

(3) Is the evidence insufficient to sustain the verdict of guilt because the Commonwealth failed to prove beyond a reasonable doubt that [Gravatt] engaged in any of the behaviors proscribed by 18 Pa.C.S. § 2709 or that he engaged in conduct with the intent to harass, annoy, or alarm the complainant?

(4) Is the evidence insufficient to sustain the verdict of guilt because the Commonwealth failed to prove beyond a reasonable doubt that [Gravatt] engaged in any of the behaviors proscribed by 18 Pa.C.S. § 2709.1 or that he

- 2 -

engaged in conduct with the intent to place another person in reasonable fear of bodily injury or to cause substantial emotional distress?

(5) Is the verdict against the weight of the evidence because all of the witnesses provided biased, self-serving testimony and there was no reason to believe one witness any more than another?

(6) Did the sentencing court fail to put specific reasons on the record supporting the imposition of an aggravated consecutive sentence?

(7) Did the sentencing court err in imposing sentences for both stalking and harassment because harassment is a lesser included offense of stalking and thus the sentences merged?

Appellant's Brief, at 6-7.[4]

After a careful review of the briefs on appeal, the certified record, and relevant case law, we conclude that the trial court correctly disposes of Gravatt's first five issue raised on appeal. Thus, we rely upon the trial court's Rule 1925(a) opinion to dispose of those issues. **See** Trial Court Opinion, 9/14/17, at 5-16.[5]

Gravatt next claims that the court abused its discretion in imposing an aggravated consecutive sentence without placing specific reasons on the record to support such a sentence. We find this claim waived.

---

[4] Although Gravatt raises a Pa.R.Crim.P. 600 motion issue in his Rule 1925(b) concise statement, he has abandoned that issue in his appellate brief. Thus, we decline to address it.

[5] We instruct the parties to attach a copy of the trial court opinion in the event of further proceedings in the matter.

Gravatt's claim goes to the discretionary aspects of his sentence. Pennsylvania Rule of Appellate Procedure 2119(f) explicitly requires that:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f) (emphasis added). Gravatt has failed to include a separate statement in his brief pursuant to Rule 2119(f). The Commonwealth has objected to its omission. *See Commonwealth v. Anderson*, 830 A.2d 1013 (Pa. Super. 2003). Thus, we are precluded from reaching the merits of the claim. *Commonwealth v. Hudson*, 820 A.2d 720 (Pa. Super. 2003).

Finally, Gravatt claims that his sentence is illegal because the crime of harassment merges with the crime of stalking for sentencing purposes.

A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. *Commonwealth v. Quintua*, 56 A.3d 399, 400 (Pa. Super. 2012) (citation omitted). Our Judicial Code states that

> [n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. **Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.**

42 Pa.C.S. § 9765 (emphasis added). With regard to the crimes of harassment and stalking, this Court has determined that "one can harass without stalking, but one cannot stalk without also harassing. Stalking is

- 4 -

simply a more serious form of harassment." ***Commonwealth v. Reese***, 725 A.2d 190, 192 (Pa. Super. 1999). Thus, harassment is a constituent offense of stalking. ***Id.***

Here, Gravatt's sentence includes probation for both his stalking and harassment convictions; his stalking sentence was ordered to run concurrent to his terroristic threats' sentence, while his harassment sentence was ordered to run consecutive to his terroristic threats' sentence of incarceration. Moreover, his harassment charge is based upon the same criminal act as his stalking charge. Therefore, his harassment conviction merges into the correlated stalking conviction. Thus, we must remand to the trial court so that it can sentence Gravatt based upon the stalking conviction only. ***See*** 42 Pa.C.S. § 9765.[6]

Judgment of sentence for terroristic threats affirmed. Judgments of sentence for stalking and harassment vacated. Case remanded for

---

[6] We decline to accept the trial court's suggestion that "the sentence for [s]talking can be vacated without upsetting the overall sentencing structure." Trial Court Opinion, 9/14/17, at 22. While Gravatt's probationary sentence for stalking was ordered to run concurrent to his terroristic threats' sentence, it does not change the fact that harassment is the lesser-included offense, and, thus, it is that crime that merges into the stalking crime and should be vacated. Moreover, because the court only sentenced Gravatt to one year of probation for harassment versus three years of probation for stalking, we cannot conclude that merger would not upset the sentencing scheme. ***Commonwealth v. Williams***, 871 A.2d 254 (Pa. Super. 2005) (if appellate court's disposition upsets overall sentencing scheme of trial court, it must remand so that court can restructure sentence plan).

resentencing consistent with the dictates of this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/18

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :       No. CP-46-CR-0008237-2015
                             :
                             :
         v.                  :
                             :       2231 EDA 2017

DONALD GRAVATT                :

**OPINION**

**Page, J.**                                              *September 14, 2017*

Defendant appeals from this Court's Judgement of Sentence on May 30, 2017. For the reasons set forth below, Defendant's appeal is without merit. Therefore, any claim of error on the part of this Court should be dismissed and the ruling should be affirmed.

**FACTS AND PROCEDURAL HISTORY**

The Defendant was arrested and charged with Terroristic Threats, Stalking, and Harassment. The Commonwealth alleged that the Defendant had threatened the victims and engaged in a course of conduct which threatened and harassed the victims. At trial, one of the complainants, Bridget Liczbinski, testified that her family lived next door to the Defendant and their homes shared a driveway. *N.T. Trial Day 1* p. 18. Within a month of moving into the home, the Defendant called the police because he did not approve of the amount of cars the Liczbinskis had in the driveway. *Id.* In 2011, there was an incident where the Defendant shoveled snow onto their half of the driveway, and there was an argument where the Defendant shoved Mr. Liczbinski. *Id.* at 20-21. Mr. Liczbinski responded by punching the Defendant. *Id.* Mr. Liczbinski's testimony was consistent with Mrs. Liczbinski's testimony regarding this incident. *Id.* at 112. The Defendant told Mr. Liczbinski that he would "get it like your dad did." *Id.* at 22.

1

Mr. Liczbinski's father had been killed in the line of duty in May 2008 while employed as a Philadelphia Police Sergeant. *Id.* at 23. As a result of the incident, both parties were ordered to mediation, but the Defendant was unhappy with it and requested to go to Court. *Id.* at 24. Both men were told that the charges would go away if they didn't have another incident within a year. *Id.* at 24-25. After that, the Defendant continued to yell at the Liczbinskis. *Id.* at 25. In May 2014, there was an incident where the Defendant recorded the Liczbinskis and their two children playing hockey in the driveway, and when he moved his car into the driveway he almost hit one of the children. *Id.* at 27-28. On April 16, 2015, the police were called again when the Defendant was playing a vulgar program through the window while the Liczbinski children were in the driveway. *Id.* at 30-31. Officer Doyle corroborated that when she responded to that call she could hear the program from the driveway, and the program was using expletives like "fuck." *Id.* at 86.

On October 10, 2015, the Liczbinskis were watching a movie and heard yelling from outside. *Id.* at 35. When they looked outside, the Defendant was yelling at Mr. Liczbinski "calling him a pussy" and saying to come "fight me like a man." *Id.* at 36. The Defendant also told Mr. Liczbinski that "his boys were coming up to get me that his boys had been there to come get me." *Id.* at 130. Mr. Liczbinski went outside and told the Defendant that he was right there if the Defendant wanted to hit him. *Id.* Eventually, both Mr. Liczbinski and the Defendant went back inside their respective homes. *Id.* Finally, on October 16, 2015, Mrs. Liczbinski was leaving to pick up her children and when she walked past the Defendant she hear him say "he's lucky he's at work now, you know, now that I'm here with my boy[…] we'll wait for him […] that motherfucker is going to find out tonight when he gets home. We'll be waiting for him. We're going to kill that motherfucker tonight." *Id.* at 39-40. The youngest children were present, and Mrs. Liczbinski was afraid. *Id.* at 40. Mr. Liczbinski was also afraid of the Defendant because he

2

knew the Defendant had guns which he had seen the Defendant carry, and had been threatened with. *Id.* at 133. He was afraid he would return home one day, and the Defendant would shoot him. *Id.* Mrs. Liczbinski did not return home that night, and went to stay with her sister. *Id.* at 42. Officer Ottenbreit corroborated that Mrs. Liczbinski advised police that the Defendant said "we're going to kill that motherfucker tonight." *Id.* at 103. The Liczbinskis then moved because Mrs. Liczbinski did not feel safe at the house due to the Defendant. *Id.* at 43. When police went to arrest the Defendant, because he was known to have weapons, the police staged a fake hit and run to get the Defendant out of his house. *Id.* at 101. When the police said his car had been hit, the Defendant blamed Mr. Liczbinski for the fictitious accident. *Id.*

Officer Howley responded to the Liczbinskis on January 8, 2013, for a report of a man with a rifle. *Id.* at 72. According to Mr. Liczbinski, the Defendant was standing in his doorway with a long gun over his shoulder pointing to the ground with his finger on the trigger and he yelled that Mr. Liczbinski's "time is coming" and that "he'll get his." *Id.* at p. 74. Mr. Liczbinski testified that the Defendant said he would shoot Mr. Liczbinski and that he would "find out like my father found out." *Id.* at 117. Mr. Liczbinski's father was shot and killed in the line of duty as a Philadelphia Police Sergeant. *Id.* The Defendant denied the incident, and said he was upstairs and he was carrying a handgun on his hip. *Id.* at p. 75.

The Defendant's wife testified for the Defense, and testified that the relationship with the Liczbinskis went bad, and that the kids would come onto their part of the driveway and "they would be doing things like playing." *Id.* at 167. Mrs. Gravatt testified that the Liczbinskis came out of their house on the October 2015 incident, and Mr. Liczbinski started pointing at the Defendant while they were still in the car. *Id.* at 170. She claimed that Mr. Liczbinski came running out of the house saying "hit me" with no provocation. *Id.* Mrs. Gravatt claimed that Mr.

3

Liczbinski had damaged their property, including a basketball court, and that there was video of him doing it, but they couldn't find that video. *Id.* at 175-76.

The Defendant presented two character witnesses who testified that the Defendant is peaceful and law-abiding. *N.T. Trial Day 2* p. 4; 15. Mr. Canada then testified for the Defense. He claimed that on the October 16, 2015 incident, the Defendant and Mr. Canada were in the driveway, and while Mrs. Liczbinski was getting into her car the Defendant told Mr. Canada that Mrs. Liczbinski's husband had assaulted him, and was harassing him because he was disabled. *Id.* at 6-7. He claimed that no threats were made that day. *Id.*

The Defendant also testified. Unsurprisingly, the Defendant presented himself as congenial and friendly to the Liczbinski's. *Id.* at 18-26. The Defendant also claimed to have severe injuries as the result of the punch. *Id.* at 36. However, despite these claims, the Defendant testified that he didn't fall to the ground after the punch, corroborating Mr. Liczbinski's story of what occurred. *Id.* at 55. The Defendant also testified that he carried his gun with him anytime he went outside "to deter further assault." *Id.* at 36.

This Court found the Defendant guilty of all charges. On May 30, 2017, this Court sentenced the Defendant to time served to 23 months for Terroristic Threats plus 3 years of consecutive probation. The Defendant was also sentenced to one year of consecutive probation for Harassment, and 3 years of probation for Stalking running concurrent with Terroristic Threats. On July 10, 2017, the Defendant filed a timely Notice of Appeal.

## ISSUES

Defendant's Concise Statement, received in chambers on August 29, 2017, raises the following issues:

1. The trial court erroneously denied Appellant's motion to dismiss pursuant to Rule 600, where the complaint was filed on 10/17/15 and trial did not commence until 2/14/17

4

2. The trial court erroneously allowed the Commonwealth to introduce a defense witness' 20 year old crimen falsi conviction.
3. The evidence was insufficient to make out the elements of each of the crimes in question.
   a. The evidence was insufficient to establish that Appellant made a threat or that any remarks he made were spoken with the specific intent required by 18 Pa.C.S. §2706.
   b. The evidence was insufficient to establish that Appellant engaged in any of the behaviors proscribed by 18 Pa.C.S. §2709 or that he engaged in any conduct with the intent to harass, annoy or alarm the complainant.
   c. The evidence was insufficient to establish that Appellant engaged in any of the behaviors proscribed by 18 Pa.C.S. § 2709.1 or that he engaged in any conduct with the intent to place another person in reasonable fear of bodily injury or to cause substantial emotional distress.
4. The verdict was against the weight of the evidence. All of the witnesses provided biased, self-serving testimony. Each attempted to transfer the blame for their equally provocative behavior to the opposing party. Where there was no unbiased testimony and where there was no reason to believe one witness any more than another, the Commonwealth failed to prove its case beyond a reasonable doubt.
5. The sentencing court abused its discretion because the case involved circumstances where the application of consecutive guideline sentences for what was essentially the same conduct was clearly unreasonable. The defendant was a 51 year old individual with no prior criminal record and a bona fide past history of community service. Where Appellant's equally provocative neighbor no longer resided in the house next door, there was no reasonable justification for the imposition of a sentence of two years of parole and four years of probation on an individual to whom the Commonwealth initially offered a negotiated plea to one year of probation in exchange for a plea to M-3 harassment.
6. The sentencing court erred in imposing sentences for both stalking and harassment because harassment is a lesser included offense of stalking and thus the sentences merged.

## ANALYSIS

1. The trial court erroneously denied Appellant's motion to dismiss pursuant to Rule 600, where the complaint was filed on 10/17/15 and trial did not commence until 2/14/17

Defendant alleges a violation of Rule 600. Rule 600 violations are evaluated under an abuse of discretion standard. The standard of review for a denial of a Rule 600 Motion is as follows.

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

5

The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ... courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Plowden*, 2017 PA Super 61, 157 A.3d 933, 936 (Pa. Super. Ct. 2017)

Under Rule 600, a "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600. Further, "for purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600 (C) (1). "The inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as a result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Plowden*, 2017 PA Super 61, 157 A.3d 933, 937

6

(Pa. Super. Ct. 2017) (citing Pa.R.Crim.P. 600, Comment (citations omitted)). Any periods of delay resulting from "(a) the unavailability of the defendant or the defendant's attorney; or (b) any continuance granted at the request of the defendant or the defendant's attorney" are excludable delay. *See* Pa.R.Crim.P. 600 (C) (3); *See Generally Commonwealth v. Hunt*, 2004 PA Super 358, ¶ 14, 858 A.2d 1234, 1240 (Pa. Super. Ct. 2004).

In this case, the Criminal Complaint was filed on October 15, 2015. Thus, the mechanical run date would be October 15, 2016. Trial commenced on February 14, 2017, 123 days after the mechanical run date. On February 25, 2016, the Defense requested a trial date, and trial was scheduled for July 18-19, 2016. It then became apparent that this Court was already scheduled for Pre-Trial Conferences on those dates. *N.T. Rule 600 Motion* 2/10/17 p. 11. Emails discussing the trial date were sent, and the Defense requested a date in September or later on a Thursday and Friday. *Id.* at 12. Trial was scheduled for October 6, 2016, but the defense and this Court had another matter that took priority. *Id.* at 12, 15. At this point, the defense attorney was unavailable for trial, and the Defense requested that the trial be moved due to the other matters scheduled on that same date. *Id.* at 18. The Defense again requested a Thursday/Friday time slot, so the case was scheduled on February 9-10, 2017 in accordance with the Defense request and the Court's calendar. *Id.* at 15. The Commonwealth requested the earliest possible date on the Court's calendar. *Id.*

On February 9, 2017, the scheduled trial date, there was a snow day that closed the courts, and February 10, 2017 did not have any jurors available for this case which was scheduled as a jury trial. *Id.* at p. 28. The trial then began on February 14, 2017, in accordance with the Court's calendar. In considering which time is excludable, the time from July 18, 2016 until October 6, 2016 would properly be excluded. When the July trial date was set, this Court

7

and counsel were unaware of when Pre-trial Conferences would be scheduled for the next quarter. However, this period of time can be attributed to the Commonwealth, and the case would still have begun within 365 days plus the excludable time. The Defense request for a trial date in September or later and a Thursday/Friday date is time attributable to the Defense and/or this Court's schedule. This is not delay caused "solely by the Commonwealth." In fact, this delay is not attributable to the Commonwealth at all. That period of time between the July trial date and the date requested by the Defense is 81 excludable days.

Then again, on October 6, 2016, this Court and the Defense attorney had another case which took priority, and the Defense requested a continuance to a date with a Thursday/Friday time slot. The next available date was February 9, 2017. There were 127 days between the October 6 trial date and the February 9 trial date. That 127 day period of time was due to a defense request, and is excludable. *See* Pa.R.Crim.P. 600 (C) (3); *See Generally Commonwealth v. Hunt*, 2004 PA Super 358, ¶ 14, 858 A.2d 1234, 1240 (Pa. Super. Ct. 2004). Additionally, the snow day and following day where no jurors were available are excludable as Court delays that were not attributable to the Commonwealth. Therefore, the Commonwealth had 210 days of excludable time, trial commenced 123 days after the mechanical run date, and the Defendant was brought to trial in accordance with Rule 600. The claim should be dismissed as meritless.

2. The trial court erroneously allowed the Commonwealth to introduce a defense witness' 20 year old crimen falsi conviction.

"When reviewing the denial of a motion *in limine,* this Court applies an evidentiary abuse of discretion standard of review.... It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." *Rivera,* 983 A.2d at 1228 (citation and quotation marks omitted).

8

Thus, the Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. *Commonwealth v. Laird,* 605 Pa. 137, 988 A.2d 618, 636 (2010). A determination that a trial court abused its discretion in making an evidentiary ruling "may not be made 'merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.' " *Id.* (quoting *Commonwealth v. Sherwood,* 603 Pa. 92, 982 A.2d 483, 495 (2009)). Further, discretion is abused when the law is either overridden or misapplied. *Commonwealth v. Randolph,* 582 Pa. 576, 873 A.2d 1277, 1281 (2005). *Commonwealth v. Hoover,* 630 Pa. 599, 610, 107 A.3d 723, 729 (2014).

Under the Pennsylvania Rules of Evidence, evidence of a prior conviction may be used to attack the credibility of any witness if it involved dishonesty or false statement. Pa.R.E. 609 (a). Section (b) applies "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if: (1) its probative value substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Pa.R.E. 609 (b). Robbery is considered *crimen falsi* and convictions for that offense are admissible for impeachment purposes. *Commonwealth v. Jackson,* 526 Pa. 294, 585 A.2d 1001 (1991); *Commonwealth v. Gordon,* 355 Pa.Super. 25, 512 A.2d 1191 (1986); *Commonwealth v. Harris,* 2005 PA Super 335, ¶ 11, 884 A.2d 920, 925 (Pa. Super. Ct. 2005).

Additionally, when the conviction is more than 10 years old, the trial court should consider the following factors:

(1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than

9

provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Commonwealth v. Randall*, 515 Pa. 410, 413, 528 A.2d 1326, 1328 (1987).

The Defendant does not specifically allege why he believes this Court erred in admitting the *Crimen Falsi* conviction of the Defense witness. However, the Commonwealth filed a written motion advising the Defendant of their intent to use the *Crimen Falsi* conviction the morning before trial, and emailed that Motion the day before. The Commonwealth gave the Defense an opportunity to contest its use, and in fact a hearing was held before trial on that Motion. Mr. Canada had a robbery conviction from 1996, and his was released from his last parole violation for that case on May 24, 2004.[1] *N.T. Rule 600 Motion* 2/10/17 p. 20; 30. Therefore, the conviction was almost 13 years old from the witness's release from confinement for the crime. Thus, this conviction would only be admissible if its probative value substantially outweighs its prejudicial value. *See* Pa.R.E. 609 (b).

---

[1] "However, the crucial date for impeachment purposes is not when a defendant was initially paroled for an offense but when a defendant was last imprisoned for an offense. Appellant was recommitted as a parole violator in 1983. "Recommitment is an administrative determination that the parolee should be reentered to serve all or part of the unexpired term of his original sentence." *Rivenbark v. Pennsylvania Board of Probation and Parole,* 509 Pa. 248, 253, 501 A.2d 1110, 1113 (1985) (footnote omitted). [...]
We interpret *Randall* as providing a bright-line rule that a defendant may be impeached with a crime involving dishonesty for which he has been imprisoned within ten years of trial regardless of whether his last period of imprisonment for that crime was imposed at the original sentencing hearing or at a hearing on the revocation of parole. In either case, the defendant's veracity may be called into question. The probative value of the conviction has not been eroded simply because the defendant was paroled over a decade before trial. If a defendant is recommitted as a parole violator, he has twice breached society's trust, once when he committed the original crime and again when he violated the terms of parole. The parole violation tends to indicate that the defendant was never successfully rehabilitated following his commission of the offense that cast doubt on his willingness to tell the truth. Moreover, we see no reason why a parole violator should be shielded from cross-examination while a defendant who has paid his debt to society by serving the full-length of his maximum sentence within ten years of trial should be subject to impeachment." *Commonwealth v. Jackson,* 385 Pa.Super. 401, 409–10, 561 A.2d 335, 338–39 (1989), *aff'd,* 526 Pa. 294, 585 A.2d 1001 (1991).

10

In making that determination, this Court considered the factors enumerated in *Commonwealth v. Randall*, 515 Pa. 410, 413, 528 A.2d 1326, 1328 (1987). First, the witness's conviction as a crime involving dishonesty does reflect upon the veracity of the witness. The second factor weighs heavily in favor of admission as the conviction is of a witness as opposed to the Defendant and does not smear the character of the Defendant or suggest he has a propensity for committing the crime he is charged with. While the Court does consider the age of the witness at the time of the crime, Mr. Canada was an adult when he committed the crime of dishonesty, and then after being released from prison, violated his parole. Fourth, and most importantly, the only third-party eyewitness in the case was Mr. Canada, the defense witness. As the only witness not a party to the case, his testimony would carry great weight. *N.T. Rule 600 Motion* 2/10/17 p. 22. Finally, the alternative means of attacking the witness's credibility were limited, as Mr. Canada provided limited testimony regarding only one incident, and that testimony was contrasted solely by the testimony of one of the victims, Mrs. Liczbinski. Additionally, this Court sat as the finder of fact, and was able to consider the conviction solely for credibility purposes. In reviewing the totality of the factors, in light of the fact that this was a witness and not the Defendant, and the fact that this case rested on credibility, this Court found that the probative value for impeachment substantially outweighed any prejudice to the Defendant. This Court did not abuse its discretion in permitting the *crimen falsi* conviction of a Defense witness, and this claim must fail.

3. The evidence was insufficient to make out the elements of each of the crimes in question.

Whether sufficient evidence exists to support the verdict is a question of law; an appellate Court's standard of review is de novo and their scope of review is plenary. *Commonwealth v. Walls*, 144 A.3d 926, 931 (Pa. Super. 2016) (citation omitted). When reviewing challenges to

11

the sufficiency of the evidence, appellate courts evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan*, 932 A.2d 226, 231 (Pa.Super.2007) (*citation omitted*). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id. (quoting Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005)).

However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id.* In addition, the appellate court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id.* Lastly, the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa.Super.2006). *Commonwealth v. Smith*, 2016 PA Super 187, 146 A.3d 257, 261–62 (Pa. Super. Ct. 2016). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Mucci*, 2016 PA Super 137, 143 A.3d 399, 409 (Pa. Super. Ct. 2016), *reargument denied* (Aug. 31, 2016).

This Court found that this case was "based on the credibility pretty much alone." *N.T. Trial Day 2* p. 94.

   a. The evidence was insufficient to establish that Appellant made a threat or that any remarks he made were spoken with the specific intent required by 18 Pa.C.S. §2706.

In order to prove the Defendant guilty of Terroristic Threats, the Commonwealth must prove that the Defendant "communicated, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706 (a) (1). In this case, the

12

Commonwealth has met their burden. While this Court felt that both sides had embellished their stories, this Court ultimately concluded that Mr. and Mrs. Liczbinski testified credibly, and had no reason to make up these threats. Conversely, this Court found the Defendant to be incredible, and found that the sole third-party eye witness, Mr. Canada, was not being truthful with this Court. Mrs. Liczbinski testified that the Defendant said "he's lucky he's at work now, you know, now that I'm here with my boy […] we'll wait for him […] that motherfucker is going to find out tonight when he gets home. We'll be waiting for him. We're going to kill that motherfucker tonight." *Id.* at p. 39-40. The Defendant clearly communicated a threat to commit a crime of violence. Mrs. Liczbinski also noted that the Defendant commonly carried a gun, and that she knew him to be in possession of weapons. The Defendant had also previously made threats that Mr. Liczbinski would have the same fate as his father, who was shot to death. There was no reason to make a specific threat, and claim that he had "boys" who would come with him to "kill that motherfucker" unless the Defendant intended to terrorize Mr. and Mrs. Liczbinski.

In *Commonwealth v. Kelly,* the defendant told the victim's secretary that he was going to kill her boss and a judge. 444 Pa.Super. 377, 386–87, 664 A.2d 123, 127–28 (1995). Like in this case, the Defendant in *Kelly* claimed that the evidence was insufficient to support that he had the intent to terrorize. The Superior Court found that the defendant's actions were "deliberate and premeditated" and that "the fact that Appellant threatened to kill both Mr. Eastburn and Judge Kane established that he did indeed manifest the intent to terrorize them. *See, Commonwealth v. Green,* 287 Pa.Super. 220, 429 A.2d 1180 (1981) (defendant's threats to "kill" the victim established defendant's intent to terrorize the victim)." *Id.* The Court found that the intent to terrorize "can be inferred from [the defendant's] actions and from the message he communicated." *Id.* Here, the Defendant made a clear specific threat to kill just like the

13

defendant in Kelly, and his actions were both deliberate and premediated based on the fact that he made the statements where Mrs. Liczbinski could hear them when no incident immediately preceded the threats. The Defendant's actions and message clearly communicate an intent to terrorize.

      b. <u>The evidence was insufficient to establish that Appellant engaged in any of the behaviors proscribed by 18 Pa.C.S. §2709 or that he engaged in any conduct with the intent to harass, annoy or alarm the complainant.</u>

To prove the crime of Harassment, the Commonwealth must prove beyond a reasonable doubt that the Defendant intended to "harass, annoy or alarm another," and that "the person communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa.C.S.A. § 2709 (a) (4). Here, the Defendant clearly intended to alarm Mr. and Mrs. Liczbinski. Making threats to kill someone's husband in front of them is clearly intended to alarm the other individual. Additionally, the Defendant stated that he and his boys were going to "kill that motherfucker." This is clearly threatening words and language. Therefore, the Defendant engaged in prohibited conduct with the intent to alarm, and the evidence was sufficient to support the conviction of Harassment.

      c. <u>The evidence was insufficient to establish that Appellant engaged in any of the behaviors proscribed by 18 Pa.C.S. § 2709.1 or that he engaged in any conduct with the intent to place another person in reasonable fear of bodily injury or to cause substantial emotional distress.</u>

In order to prove the Defendant guilty of Stalking beyond a reasonable doubt, the Commonwealth must prove that the "engage[d] in a course of conduct or repeatedly communicates to another person" and that the communication was "under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa.C.S.A. § 2709.1 (a) (2). A course of conduct is "a pattern of actions composed of more than one act over a

14

period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously." 18 Pa.C.S.A. § 2709.1 (f).

In this case, the Defendant had a pattern of threats of violence. The threats in this case began with the Defendant telling Mr. Liczbinski that he would end up just like his father, who was shot to death. The threats culminated in the Defendant threatening to kill Mr. Liczbinski within the hearing of Mrs. Liczbinski as she walked past him in their shared driveway. Additionally, the Defendant carried a gun with him often when he went outside, and his repeated threats to kill Mr. Liczbinski can only be intended to cause substantial emotional distress or reasonable fear of bodily injury. In this case, the Defendant succeeded. Mrs. Liczbinski did not go home after the last threat because she was afraid that the Defendant would follow through on his threat and kill someone. The Defendant caused so much emotional distress that the Liczbinski's had to move away to feel safe again. The Defendant's actions evince a clear intent to place the Liczbinski's in fear of bodily injury or cause substantial emotional distress. The Defendant also engaged in threatening communication repeatedly, over a long period of time. The evidence was sufficient to support a Stalking conviction.

4. The verdict was against the weight of the evidence. All of the witnesses provided biased, self-serving testimony. Each attempted to transfer the blame for their equally provocative behavior to the opposing party. Where there was no unbiased testimony and where there was no reason to believe one witness any more than another, the Commonwealth failed to prove its case beyond a reasonable doubt.

Defendant next challenges the weight of the evidence. An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the

15

evidence. *Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054–55 (2013) (*quotation marks, quotations, and citations omitted*). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (2003) (quotation marks and quotations omitted). *Commonwealth v. Smith*, 2016 PA Super 187, 146 A.3d 257, 264–65 (Pa. Super. Ct. 2016). *Commonwealth v. Devine*, 2011 PA Super 163, 26 A.3d 1139, 1146 (Pa. Super. Ct. 2011). A trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings. *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008).

Defendant claims that there was no reason to believe one witness more than another, so this Court could not have concluded that the Commonwealth proved their case. Defendant's claim is unsupported. While this Court believed that the Liczbinski's may have exaggerated some of their claims, their testimony was credible based on this Court's common sense and observation of demeanor. Further, this Court found the testimony of the Defendant and Mr. Canada to be dishonest and inconsistent at times. The behavior and demeanor of those witnesses while they were testifying provided this Court ample reason to disbelieve their testimony. This case came down to credibility, and this Court was "free to believe some, all, or none of the evidence presented." *Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa.Super.2006). *Commonwealth v. Smith*, 2016 PA Super 187, 146 A.3d 257, 261–62 (Pa. Super. Ct. 2016). This Court found the Commonwealth witnesses to be credible, and their testimony established the elements of each crime. The evidence is not so "tenuous, vague, or uncertain that the verdict shocks the conscience of the court." The Defendant presenting dishonest witnesses does not render the

16

testimony of the Commonwealth unreliable where this Court is able to make a credibility determination.

5. The sentencing court abused its discretion because the case involved circumstances where the application of consecutive guideline sentences for what was essentially the same conduct was clearly unreasonable. The defendant was a 51 year old individual with no prior criminal record and a bona fide past history of community service. Where Appellant's equally provocative neighbor no longer resided in the house next door, there was no reasonable justification for the imposition of a sentence of two years of parole and four years of probation on an individual to whom the Commonwealth initially offered a negotiated plea to one year of probation in exchange for a plea to M-3 harassment.

Defendant challenges his consecutive sentences. "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Mastromarino,* 2 A.3d 581, 585 (Pa.Super.2010) (citation omitted). Before [an appellate court may] reach the merits of this [issue], [they] must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition [the appellate court], in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, [the appellate court] will then proceed to decide the substantive merits of the case. *Commonwealth v. Malovich,* 903 A.2d 1247, 1250 (Pa.Super.2006) (citations omitted).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *See Commonwealth v. Paul,* 925 A.2d 825 (Pa.Super.2007). "A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions

17

were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin,* 65 A.3d 932, 935 (Pa.Super.2013) (quotation and quotation marks omitted).

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Commonwealth v. Prisk,* 13 A.3d 526, 533 (Pa.Super.2011). *See Commonwealth v. Hoag,* 445 Pa.Super. 455, 665 A.2d 1212 (1995) (stating an appellant is not entitled to a "volume discount" for his crimes by having all sentences run concurrently). In fact, [the Superior] Court has recognized "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda,* 52 A.3d 365, 372 (Pa.Super.2012) *(en banc)* (citation omitted). However, the Superior Court has also held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors— raises a substantial question." *Commonwealth v. Raven,* 2014 PA Super 168, 97 A.3d 1244, 1253 (Pa. Super. Ct. 2014) *(citing Commonwealth v. Perry,* 883 A.2d 599, 602 (Pa.Super.2005)). The Defendant in this case challenges the imposition of consecutive probation sentences, claiming this Court had no reason to impose consecutive probation where the Defendant was 51 years old without a criminal record and a history of community service. The Defendant also argues that this Court's imposition of consecutive probation is unreasonable because the Commonwealth offered a negotiated plea for one year of probation for harassment. Defendant does not allege that this Court didn't consider mitigating factors; he solely alleges that the imposition of a

18

consecutive sentence was unreasonable. Challenges to this discretion do not ordinarily raise a substantial question. However, assuming *arguendo* that the Defendant has raised a substantial question, this Court will address the merits of this claim.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa.Super.2006). In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Haynes*, 2015 PA Super 214, 125 A.3d 800, 808 (Pa. Super. Ct. 2015), *appeal denied*, 140 A.3d 12 (Pa. 2016) (some internal cites omitted). When, as here, the trial court has the benefit of a pre-sentence report, [the appellate courts] presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors. *Commonwealth v. Seagraves*, 2014 PA Super 252, 103 A.3d 839, 842 (Pa. Super. Ct. 2014) (*citing Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa.Super.2013).

A review of the "discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. §§ 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
In all other cases the appellate court shall affirm the sentence imposed by the sentencing court. 42 Pa.C.S. § 9781(c).

In reviewing the record, [the appellate court] consider[s]:

19

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.
(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
(3) The findings upon which the sentence was based.
(4) The guidelines promulgated by the commission.
42 Pa.C.S. § 9781(d) 42 Pa.C.S. § 9781(d). *Commonwealth v. Raven*, 2014 PA Super 168, 97 A.3d 1244, 1254 (Pa. Super. Ct. 2014).

Initially, this Court fails to see how the plea negotiations between the Commonwealth and the Defendant are binding or impose a limitation on this Court's discretion or sentencing guidelines. Additionally, a negotiated sentence from a plea agreement takes into account the Defendant's acceptance of responsibility, something that is absent in this case. The Defendant finally contends that he does not deserve consecutive probation because he has no criminal record, is 51 years old, and has a history of community service. These factors were presented to this Court, and weighed against all the other information before the Court. The Defendant has not alleged how this is a misapplication of the law or otherwise an abuse of discretion. In this case, the Defendant is not entitled to a "volume discount" for his crimes. His lack of criminal history is accounted for in the sentencing guidelines, and the Defendant received a guideline range sentence. While the Defendant's community service is admirable, it is not enough to overcome the Defendant's complete lack of remorse or acceptance of responsibility. *N.T. Sentencing 5/30/17* p. 8. Further, the Defendant was sentenced to time served to 23 months of incarceration followed by 3 years of probation for Terroristic Threats. He was further sentenced to one year consecutive probation for Harassment, and three years' probation for Stalking concurrent to Terroristic Threats. Only one of his sentences was consecutive. This Court considered the need to protect the community, and the Defendant's complete lack of remorse in fashioning its sentence. The sentence is not so great as to be unreasonable, and is not an abuse of discretion.

20

6. The sentencing court erred in imposing sentences for both stalking and harassment because harassment is a lesser included offense of stalking and thus the sentences merged.

Finally, Defendant challenges the imposition of separate sentences for stalking and harassment. Defendant claims that the charges should merge for sentencing purposes. A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Martinez*, 2016 PA Super 309, 153 A.3d 1025, 1029–30 (Pa. Super. Ct. 2016) (*citing Commonwealth v. Quintua*, 56 A.3d 399, 400 (Pa.Super. 2012)). The test for merger is determined by statute:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

"The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Commonwealth v. Baldwin*, 604 Pa. 34, 985 A.2d 830, 833 (2009). *Accord Commonwealth v. Wade*, 33 A.3d 108 (Pa.Super. 2011) (holding Section 9765 prohibits merger of sentences unless strict two-part test met). "When considering whether there is a single criminal act or multiple criminal acts, the question is not 'whether there was a "break in the chain" of criminal activity.' The issue is whether "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Commonwealth v. Pettersen*, 49 A.3d 903, 912 (Pa.Super. 2012). In determining whether two or more convictions arose from a single criminal act for purposes of

21

sentencing, [the Court] must examine the charging documents filed by the Commonwealth. *Commonwealth v. Jenkins*, 96 A.3d 1055, 1060 (Pa.Super. 2014) (holding, consistent with our Supreme Court's jurisprudence, "We must determine whether [defendant's] actions ... constituted a single criminal act, with reference to elements of the crime as charged by the Commonwealth.") (internal quotation marks and citation omitted). *Commonwealth v. Martinez*, 2016 PA Super 309, 153 A.3d 1025, 1030–31 (Pa. Super. Ct. 2016).

Here, the crimes charged all occurred on October 16, 2015 and comprise one criminal act. Additionally, this Court agrees that Harassment is in fact a lesser included charge of Stalking. Harassment requires the intent to harass, annoy, or alarm, and Stalking requires the intent to cause substantial emotional distress or reasonable fear of bodily injury. While the intent required is different, their distinction is in name only. It is impossible to intend to cause substantial emotional distress or reasonable fear of bodily injury without also intending to harass or alarm.[2] However, the sentence for Stalking can be vacated without upsetting the overall sentencing structure.[3] "The offense that is more broadly defined is conceptualized as the greater offense and

[2] "Upon a simple reading of the statute we find harassment requires the prohibited conduct be done with the intent to "harass, annoy, or alarm." On the other hand, stalking requires a more malevolent intent "to place [another] in reasonable fear of bodily injury" or "cause substantial emotional distress." The more malevolent intent necessarily includes the lesser intent as one cannot intend to place someone in fear of bodily injury or cause emotional distress without also intending to annoy or alarm that person. Stalking, as the greater offense, necessarily contains one or more elements not contained in the lesser offense. The relevant inquiry is whether all of the elements of harassment are contained in stalking. We therefore hold that all the factual predicates which support a finding of harassment would equally serve as factual predicates for stalking if committed repeatedly under circumstances demonstrating the requisite intent. For instance, a harassment charge under either § 2709(a)(1) or (2) merely requires a single act of physical contact or following in public with the intent to harass, annoy, or alarm. This same conduct if committed repeatedly with the intent to place the victim in fear of bodily injury or cause the victim substantial emotional distress would rise to the level of stalking. Moreover, but for the differing intent, the language used in § 2709(a)(3) closely parallels the language found in the stalking subsection. Clearly, one can harass without stalking, but one cannot stalk without also harassing. Stalking is simply a more serious form of harassment. Consequently, we find that harassment is a constituent offense of stalking. *Commonwealth v. Reese*, 725 A.2d 190, 191–92 (Pa. Super. Ct. 1999)

[3] An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it and may remand the matter. 42 Pa.C.S.A. § 706. If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan. *Commonwealth v. Williams*, 871 A.2d 254, 266, 267 (Pa.Super.2005). By contrast, if our decision does not alter the overall scheme, there is no need for a remand.

22

the offense whose elements are entirely subsumed is conceptualized as the lesser included offense. Where such a relationship exists, the merger doctrine requires that only one sentence may be imposed, but it has nothing to say about which sentence that should be." *Commonwealth v. Everett*, 550 Pa. 312, 315–16, 705 A.2d 837, 839 (1998).[4] Therefore, the Court may vacate part of the sentence without upsetting the overall sentencing scheme as the Stalking sentence is concurrent to the Terroristic Threats sentence.

## CONCLUSION

For all of the aforementioned reasons, this Court's decision and order should be **AFFIRMED**.

BY THE COURT:

GARRETT D. PAGE, J.

Copies of the above Opinion
Mailed on 9/14/17
By Interoffice Mail to:
Robert Falin, Esq., ADA
Paul George, Esq., PD
Anne Schools – Court Administration
By First Class Mail to:
Donald Gravatt, Defendant

Judicial Secretary

---

*Commonwealth v. Thur*, 2006 PA Super 208, ¶¶ 80-83, 906 A.2d 552, 569–70 (Pa. Super. Ct. 2006) (*quoting Commonwealth v. Robinson*, 817 A.2d 1153, 1163 n. 14 (Pa.Super.2003) (emphasis in the original).
[4] Superior Court has often stated that when crimes merge for sentencing purposes, the one for which a defendant may be sentenced is the one to which the legislature has attached the greatest penalty. See *Commonwealth v. O'Brien*, 356 Pa.Super. 294, 514 A.2d 618 (1986); *Commonwealth v. Sayko*, 333 Pa.Super. 265, 482 A.2d 559 (1984); *Commonwealth v. Boerner*, 281 Pa.Super. 505, 422 A.2d 583 (1980). Although in most cases the "greater" offense for merger analysis will also be the offense carrying the greater penalty, this is not universally true. In *Commonwealth v. Kozrad*, 346 Pa.Super. 470, 499 A.2d 1096 (1985), the court applied this rule in affirming a judgment of sentence for homicide by vehicle while driving under the influence, a third degree felony with a mandatory minimum sentence of three years, while vacating the separate sentence imposed for the first degree misdemeanor of involuntary manslaughter. *Commonwealth v. Everett*, 550 Pa. 312, 315–16, 705 A.2d 837, 839 (1998).

23